**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FRANK LOUIS AMODEO,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No: 6:12-cv-641-Orl-28DAB
(6:08-cr-176-Orl-28GJK)

## ORDER

This case is before the Court on the motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 1) filed by Frank Louis Amodeo and the memorandum of law (Doc. 11) in support thereof. The Government filed a Response (Doc. 16) to the § 2255 motion in compliance with this Court's instructions and with the *Rules Governing Section 2255 Proceedings for the United States District Courts*. (See Order, Doc. 4). Petitioner filed a Reply (Doc. 55) and numerous supplements and exhibits.[1]

Petitioner alleges fifteen claims for relief, each with numerous subclaims, for a total of more than seventy claims. (See Doc.1). As discussed below, the Court finds that the motion to vacate, set aside, or correct sentence is untimely or without merit, and therefore it must be denied.

**I.**    **Background**

On August 6, 2008, Petitioner was charged by Indictment with one count of

---

[1] Petitioner filed his motion *pro se* in April 2012. Counsel was appointed for Petitioner in May 2014. (See Doc. 94). Most of Petitioner's submissions in this case were made while he was appearing *pro se*, though his appointed counsel supplemented the record in 2015. (See Docs. 105—107).

conspiracy to defraud the United States (Count One), nine counts of failure to remit payroll taxes (Counts Two through Ten), sixteen counts of wire fraud (Counts Eleven through Twenty-Six), and one count of obstruction of an agency investigation (Count Twenty-Seven) in violation of 18 U.S.C. § 371, 26 U.S.C. § 7202, 18 U.S.C. § 1343, and 18 U.S.C. § 1505, respectively. (Case No. 6:08-cr-176-Orl-28GJK, Doc. 1).[2]

On September 23, 2008, Petitioner entered a guilty plea to Counts One, Seven, Eight, Ten, and Twenty-Seven of the Indictment. (See Crim. Case Docs. 30, 33, 34, 35, 38, & 41). This Court accepted the guilty plea and adjudicated Petitioner guilty of those counts. (Crim. Case Doc. 119). On May 12, 2009, the Court commenced a five-day sentencing hearing, after which it sentenced Petitioner to five consecutive 54-month terms of imprisonment, for a total 270-month sentence. (See Trs. of Sentencing Hr'g, Crim. Case Docs. 144-48). Judgment was entered on May 27, 2009. (Crim. Case Doc. 126).[3] Petitioner appealed, and on July 21, 2010, the Eleventh Circuit Court of Appeals affirmed. United States v. Amodeo, 387 F. App'x 953 (11th Cir. 2010).[4]

In June 2011, Petitioner filed a motion to vacate, which was assigned Case No. 6:11-cv-1056-Orl-28GJK. That case was dismissed without prejudice on October 31, 2011, after Petitioner repeatedly failed to comply with the Court's orders regarding amending the contents of his motion. (See Doc. 12 in Case No. 6:11-cv-1056). Petitioner initiated a

---

[2] Documents in Case No. 6:08-cr-176-Orl-28GJK will be cited in this Order as "Crim. Case Doc." followed by the document number.

[3] On July 2, 2009, the Court entered a Corrected Judgment solely to correct the middle initial in Petitioner's name in the caption and page headers of the original Judgment. (Crim. Case Doc. 140).

[4] The Eleventh Circuit issued its mandate on August 19, 2010. (See Crim. Case. Doc. 194).

2

second § 2255 action on November 18, 2011, which was assigned Case No. 6:11-cv-1850-Orl-28GJK. On February 7, 2012, that case was dismissed without prejudice after Petitioner again failed to comply with orders regarding amending his court filings. (See Doc. 6 in Case No. 6:11-cv-1850). Petitioner filed the instant motion to vacate, set aside, or correct sentence on April 18, 2012.[5]

II.  **Discussion**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the time for filing a motion to vacate, set aside, or correct a sentence is restricted, as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The Government contends that Petitioner's motion should be dismissed because it was not timely filed under the one-year limitations period of § 2255. The Court agrees.

---

[5] The docket in this case reflects a filing date of April 25, 2012. However, Petitioner's § 2255 motion is deemed filed on the date it was delivered to prison officials for mailing. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001). "Absent evidence to the contrary in the form of prison logs or other records, [the court] will assume that the motion was delivered to prison authorities the day [Petitioner] signed it . . . ." Id. Petitioner signed his petition on April 18, 2012. (See Doc. 1 at 14).

### A. Date of Finality of Conviction

Petitioner did not file this motion within one year of the date his judgment of conviction became final. The Eleventh Circuit Court of Appeals entered its judgment affirming Petitioner's convictions and sentences on July 21, 2010, and Petitioner did not file a petition for writ of certiorari with regard to that judgment. "[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." Clay v. United States, 537 U.S. 522, 532 (2003). The time in which to petition for certiorari expires ninety days after entry of judgment by the court of appeals. See id. at 525; see also Sup. Ct. R. 13 (setting forth a ninety-day deadline and providing that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate").

The Supreme Court did, however, extend the time in which Petitioner could file a petition for writ of certiorari through November 22, 2010. (See Doc. 63-1 at 14-15). "An extension of time by the Supreme Court in which to file a petition for writ of certiorari may extend the deadline for filing a habeas petition." Susinka v. United States, 19 F. Supp. 3d 829, 836 (N.D. Ill. 2014); see also Warmus v. United States, 253 F. App'x 2, 5-6 (11th Cir. 2007) (assuming without deciding that a Supreme Court order granting an extension of time to file a certiorari petition would extend the one-year limitations period). Therefore, at the latest, Petitioner's convictions and sentences became final on November 22, 2010, and Petitioner had through November 22, 2011, to file a § 2255 motion. Petitioner's motion, filed on April 18, 2012, is untimely.

### B. Relation Back

Petitioner's current § 2255 motion does not relate back to his prior § 2255 motions

in Case Numbers 6:11-cv-1056 and 6:11-cv-1850 even though it concerns the same facts. Petitioner's prior § 2255 cases were dismissed without prejudice after Petitioner failed to comply with Court orders, and the instant case is a new case rather than a continuation or amendment of those prior cases. Under these circumstances, the latest motion does not relate back, and Petitioner's motion is time-barred. See Jones v. United States, 304 F.3d 1035, 1042-44 (11th Cir. 2002) (holding that an untimely § 2255 motion cannot relate back to a timely motion filed in another case); Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000) ("[A] § 2254 petition cannot relate back to a previously filed petition that has been dismissed without prejudice because there is nothing for the current petition to relate back to."); accord Marsh v. Soares, 223 F.3d 1217, 1219 (10th Cir. 2000) ("'[A] separately filed claim, as opposed to an amendment or a supplementary pleading, does not relate back to a previously filed claim.'" (alteration in original) (quoting Benge v. United States, 17 F.3d 1286, 1288 (10th Cir. 1994))); Graham v. Johnson, 168 F.3d 762, 780 (5th Cir. 1999) ("Construing an application filed after a previous application is dismissed without prejudice as a continuation of the first application for all purposes would eviscerate the AEDPA limitations period and thwart one of AEDPA's principal purposes.").

This case is distinguishable from Mederos v. United States, 218 F.3d 1252 (11th Cir. 2000), in which the Eleventh Circuit vacated the district court's dismissal of a petitioner's second § 2255 motion as time-barred. There, the petitioner timely filed a § 2255 motion on February 1, 1999—one day before the one-year limitations period expired. The district court denied that petition without prejudice on February 9, 1999, because the petitioner had failed to sign it under penalty of perjury. On February 25, 1999, the petitioner filed a second § 2255 motion that included the required signature, and it was docketed as

an amended motion under the same case number. The district court denied that second motion as time-barred.

In vacating the district court's order, the Eleventh Circuit concluded "that the district court abused its discretion by not construing Mederos's second § 2255 motion as an amended motion that related back to his timely initial motion." Id. at 1253. The court found that "the unique circumstances presented by [the] case require[d] special consideration" and that the omission of the signature "was a readily curable defect" that the petitioner remedied "without delay." Id. at 1254. As explained by the appellate court, the second motion "should have been construed liberally as an amendment to [the] initial § 2255 motion." Id.

Here, although Petitioner's § 2255 motions in his prior cases had pleading deficiencies, the deficiencies were not mere technical deficiencies that were readily curable, such as a failure to sign the motion to vacate. Furthermore, unlike the movant in Mederos, Petitioner did not promptly remedy the defects in his motions. In Case Number 6:11-cv-1056, the Court gave Petitioner three opportunities, with detailed instructions, to file a viable § 2255 motion. Petitioner repeatedly failed to comply with the Court's orders, and he did not seek an extension of the time in which to file a third amended motion to vacate. (See Doc. 12 in Case No. 6:11-cv-1056). Petitioner appealed the dismissal of that case, and the Eleventh Circuit Court of Appeals denied a certificate of appealability. (Id. Doc. 19). Similarly, in Case Number 6:11-cv-1850, the Court again gave Petitioner multiple opportunities to properly file a § 2255 motion and also granted him an expanded page limit to accommodate his assertion of numerous claims. Nevertheless, Petitioner failed to comply with the Court's orders. (See Docs. 5 & 6 in Case No. 6:11-cv-1850). Petitioner

also appealed the dismissal of his second case, and the appellate court denied a certificate of appealability. (Id. Docs. 17 & 18).[6] Therefore, the instant motion does not relate back to the motion filed in either of Petitioner's prior § 2255 cases, and Petitioner's § 2255 motion is untimely.

### C.  Newly Discovered Evidence

Petitioner argues that his § 2255 motion is not time-barred because it was filed within one year of his discovery of new evidence.[7] (See Doc. 1 at 13; Doc. 11 at 10-11; & Doc. 55 at 8-9). In his filings, Petitioner lists several allegedly newly discovered facts, but as to most of these he does not elaborate, explain their relationship to any claim that he has asserted, or argue why they entitle him to relief.[8] And, while Petitioner does provide

---

[6] In denying a certificate of appealability in Case No. 6:11-cv-1850, the Eleventh Circuit noted:

> [Petitioner] was given numerous opportunities, both in his initial § 2255 proceedings and the instant proceedings, to amend his motion with clear instructions from the district court, but failed to comply. Furthermore, [Petitioner's] filings evince an intent to continue not to comply, as his filings make clear that he did not believe that his claims could be filed in a way that complied with the court's rules and intended to continue requesting that the court allow him to file a longer pleading.
> The [district] court repeatedly warned [Petitioner] that it would dismiss his case if he failed to timely file an amended motion in compliance with its instructions. Moreover, [Petitioner's] status as a *pro se* litigant did not excuse him from complying with the procedural rules governing the proper form of a § 2255 motion to vacate.

(Doc. 17 in Case No. 6:11-cv-1850 (citations omitted)).

[7] See 28 U.S.C. § 2255(f)(4) (providing that a § 2255 motion is timely filed if it is filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence").

[8] (See, e.g., Doc. 1 at 13 (stating that "[a]mongst these" newly discovered facts are "the government's comments at the Berman mediation," "this court's August 2011 decision in the Palaxar case," "the statements of several witnesses in February 2012," and "even just last week [April 2012] the bankruptcy court made new findings in the Mirabilis-AEM

7

some argument and elaboration as to two alleged newly discovered facts, Petitioner has not established that they provide a basis for relief either.

First, Petitioner contends that "it is arguable [that] the government's decision to destroy Dan Myers's signed plea agreement in or about February 2012 constitutes a new fact that supports several of [his] § 2255 grounds." (Doc. 55 at 9). Myers is an accountant who was retained by Petitioner in 2004 to assist with some of the "plans" involved in the crimes of conviction. (See Myers Aff., Doc. 61-1 at 1-4). Petitioner asserts that the Government "breached its express oral agreement to give [him] time credit for any prosecution of Dan Myers" and that he would not have pleaded guilty "[i]f [he] had known there would be no derivative cooperation credit from Mr. Myers's guilty plea." (Doc. 54 at 18).

The alleged destruction of Myers's plea agreement in February 2012 does not give rise to a cognizable claim. As an initial matter, in December 2012 Petitioner requested leave to amend his § 2255 petition to add eleven claims, including claims based on the destruction of Myers's plea agreement. (See Docs. 29 & 30). However, the Court denied the request for leave to amend, noting that Petitioner: waited eight months to move to amend his motion; did not allege that the claims were unknown to him in April 2012 when he filed his motion to vacate; and did not show good cause for the undue delay in seeking to amend his motion. (Order, Doc. 43).

In any event, even if Petitioner's claim based on destruction of Myers's plea agreement were deemed timely and properly before the Court at this time, this claim is

---

bankruptcy"); Doc. 11 at 11 (listing "some examples: the Mirabilis nolo contendere, the DIP financial report, affidavit of Dan Myers, statements from Robert Pollack")).

8

without merit. Petitioner's assertions regarding a breached promise of substantial credit are belied by both Petitioner's written plea agreement and Petitioner's statements during the plea colloquy, and therefore this claim fails.

Petitioner's plea agreement (Crim. Case Doc. 38) specifically provides that it "constitutes the entire agreement between the government and [Petitioner] with respect to the . . . guilty plea and no other promises, agreements, or representations exist or have been made to [Petitioner] or [Petitioner]'s attorney with regard to such guilty plea." (Crim. Case Doc. 38 at 36). Further, in the plea agreement Petitioner acknowledged that he was "entering into [the] agreement and [wa]s pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and [Petitioner] and [Petitioner]'s attorney and without promise of benefit of any kind (other than the concessions contained herein)." (Id. at 24-25). With regard to substantial assistance, the plea agreement provided that if Petitioner cooperated in the investigation and prosecution of other persons, the government agreed "to consider whether such cooperation qualifies as 'substantial assistance' . . . warranting the filing of a motion for a reduction of sentence." (Id. at 7).

And, during the plea colloquy, the magistrate judge questioned Petitioner at length regarding the circumstances of his plea and his understanding of the written plea agreement. Petitioner expressly denied that any promises or representations other than those set forth in the plea agreement had been made to him by the Government or anyone else to induce him to enter into a plea agreement. (Tr. of Change of Plea Hr'g, Crim. Case Doc. 41, at 36-37). Petitioner also acknowledged that he understood that the Court was not bound by the agreement in any way, (id. at 37); that the determination as to whether

9

he qualified for a substantial assistance motion was solely the decision of the U.S. Attorney's office, (id. at 38); that he would have no basis to challenge a decision by the U.S. Attorney not to file a substantial assistance motion, (id. at 39); and that he would not be allowed to withdraw his plea "if things didn't go as [Petitioner] like[s]" with regard to substantial assistance, (id. at 39).

"Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[T]he representations of the defendant . . . at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Id. at 73-74; accord United States v. Long, 722 F.3d 257, 264 (5th Cir. 2013) (finding no breach of plea agreement, noting that "[o]f particular relevance, the district court inquired into whether there were any extrinsic agreements not included in the plea agreement that persuaded [the defendant] to plead guilty—the very argument that [the defendant] asserts in support of his appeal"). Here, the plea agreement's merger clause and Petitioner's sworn declarations in open court refute his claim of breach of an express agreement. Cf. Winthrop-Redin v. United States, 767 F.3d 1210, 1216-17 (11th Cir. 2014) (rejecting § 2255 petitioner's involuntary plea claim as "based on conclusory and incredible allegations" where the petitioner initialed and signed a written plea agreement that contained contrary statements and "then testified under oath and in detail that his plea had not been induced by threats"). Thus, Petitioner's reliance on the destruction of the Myers plea agreement is unavailing, and this "newly discovered fact" does not support his claims for relief or entitle him to an evidentiary hearing.

Second, Petitioner asserts that "Judge Lawson's June 2011 final order in the

Richard Berman malpractice action was also a supportive fact, which extends to June 2012 the time for filing an original § 2255." (Doc. 55 at 9). Petitioner contends that he learned in June 2011 that his malpractice claim against Berman, his former attorney, was foreclosed by his guilty plea, and he asserts that he would not have pleaded guilty had he known of this consequence of his plea. (Doc. 54 at 19). He also argues that his attorney misadvised him regarding the effect of his guilty plea on the malpractice suit. (Id.).

The malpractice action to which Petitioner refers was filed by Petitioner in state court in 2008.[9] Petitioner has included in his filings a Notice of Hearing filed in that case in May 2011 noticing a hearing on a motion for sanctions and to tax costs; an envelope dated May 13, 2011; and a transcript from a May 16, 2011 hearing in that case. (See "Appendix 4-D," Doc. 63-1 at 16 to 20). Petitioner describes these documents as "Documents demonstrating the Berman malpractice action concluded in or about June 2011, revealing the per[]vasive misadvice concerning the consequences of the guilty plea." ("List of Appendices," Doc. 63). Petitioner contends: "These items reveal that I "only became aware the advice of my attorneys, the government's attorneys, and the district court was wrong in or about June 2011 after the conclusion of the Florida State lawsuit against Mr. Berman. Notably, triggering a new date for the petition as a whole or fo[r] several of the grounds separately." (Id. at 16).

However, the state court documents submitted by Petitioner do not establish that Petitioner learned—or that the state court ruled—in June 2011 that his malpractice suit was barred. As noted above, the documents upon which Petitioner relies are a hearing notice

---

[9] Case No. 2008-CA-31333 in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida.

11

Case 6:12-cv-00641-JA-DAB Document 109 Filed 09/25/15 Page 12 of 16 PageID 3234
Case: 15-15280 Date Filed: 11/27/2015 Page: 12 of 16

and a hearing transcript from May 2011, neither of which illustrate such knowledge or that the state court judge determined at that time that the malpractice claim was barred. Indeed, Petitioner's assertion regarding when he became aware that his malpractice claim was foreclosed is inaccurate. The Court may take judicial notice of the state court proceedings, see Coney v. Smith, 738 F.2d 1199, 1200 (11th Cir. 1984), and the records from those proceedings[10] belie Petitioner's contention that he did not learn of the state court's ruling until June 2011. On the contrary, the state court ruled in December 2009 that Petitioner's malpractice claim—Count I of his Amended Complaint in that case—was foreclosed by his guilty plea. (Dec. 8, 2009 order in Case No. 2008-CA-31333). The case then proceeded for a year and a half before a cost judgment was entered against Petitioner on June 15, 2011. (June 15, 2011 order in Case No. 2008-CA-31333).[11]

Although the malpractice action continued until 2011, the ruling on Petitioner's malpractice claim was made in December 2009, and Petitioner has not alleged that he was not aware of that ruling at that time. Indeed, in January 2011, Petitioner filed a Notice of Appeal of that ruling and another of the state court's orders. (See Notice of Appeal in Case No. 2008-CA-31333, dated Jan. 6, 2011, and signed by Petitioner). Thus, Petitioner knew of the adverse ruling at least by January 2011, and this "newly discovered fact" does not render his April 2012 § 2255 petition timely. Even if this claim were timely, Petitioner has

---

[10] The Court takes judicial notice of information available regarding Case No. 2008-CA-031333 on the database maintained by the Clerk of Court for Orange County, Florida, last viewed on September 23, 2015, https://myeclerk.myorangeclerk.com.

[11] As noted in the text earlier, Petitioner refers to a final order having been entered by "Judge Lawson" in June 2011. The June 2011 order and many other orders were entered by Judge Thomas B. Smith rather than Judge Lawson. The state court records do not reflect any action taken in that case by Judge Lawson.

not established entitlement to relief under § 2255 on this basis or that an evidentiary hearing is warranted.

### D. Actual Innocence

Petitioner also alleges that he is actually innocent of the crimes of conviction. (See Doc. 1 at 53). A showing of actual innocence may relieve habeas petitioners of the burdens imposed by 28 U.S.C. § 2244(d), which sets forth a one-year limitations period for state prisoners to file a habeas petition. See McQuiggin v. Perkins, 133 S. Ct. 1924 (2013). Thus, arguably a showing of actual innocence may relieve a petitioner from the burdens imposed by § 2255(f). "A habeas petitioner asserting actual innocence to avoid a procedural bar must show that his conviction 'probably resulted' from 'a constitutional violation.'" Arthur v. Allen, 452 F.3d 1234, 1245 (11th Cir. 2006) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). To demonstrate actual innocence, a petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. "[A]ctual innocence means *factual innocence*, not mere legal insufficiency.'" McKay v. United States, 657 F.3d 1190, 1197 (11th Cir. 2011) (emphasis in original) (quoting Bousley v. United States, 523 U.S. 614, 623 (1998) (further internal quotation omitted).

Petitioner does not support his claim of actual innocence with evidence that would raise a substantial doubt about his guilt or establish that his conviction probably resulted from a constitutional violation. Petitioner's actual innocence argument merely relates to the legal sufficiency of his convictions. Thus, Petitioner has failed to demonstrate that the untimeliness of his petition should be excused.

### E. Equitable Tolling

Finally, although Petitioner argues that § 2255(f)'s one-year limitation period should

13

be found to have been equitably tolled in this case, the Court disagrees. Equitable tolling is appropriate when a petitioner establishes both extraordinary circumstances that prevented him from timely filing his § 2255 petition and due diligence. Foley v. United States, 420 F. App'x 941, 942 (11th Cir. 2011) (citing Diaz v. Sec'y of Dep't of Corr., 362 F.3d 698, 702 (11th Cir. 2004)); Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999). "Equitable tolling is an extraordinary remedy that is limited to rare and exceptional circumstances." Perez v. Florida, 519 F. App'x 995, 997 (11th Cir. 2013). "The petitioner bears the burden of showing that equitable tolling is warranted." Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009).

The Court rejects Petitioner's assertion that is he is entitled to the benefit of equitable tolling based on the alleged unfairness of the dismissal without prejudice of his second § 2255 petition.[12] This Court and the Eleventh Circuit rejected Petitioner's challenges to that dismissal, and the Supreme Court denied Petitioner's petition for a writ of certiorari regarding that dismissal. Petitioner has not established extraordinary circumstances and due diligence with regard to that dismissal, and therefore equitable tolling is not warranted on this basis.

And, to the extent that Petitioner argues for equitable tolling based on his mental health illness, he is not entitled to relief. The Eleventh Circuit has held that a person with a substantial mental illness may be granted equitable tolling of the one-year limitations period if there is a causal connection between the prisoner's mental incapacity and his inability to timely file a habeas petition. See Hunter, 587 F.3d at 1308; Manders v. United States, Nos. 6:10-cv-1329-Orl-31GJK & 6:05-cr-173-Orl-31GJK, 2012 WL 72737, at *2

---

[12] Case No. 6:11-cv-1056.

(M.D. Fla. Jan. 10, 2012). This Court is aware that Petitioner has been under the care of mental health professionals.[13] However, Petitioner has presented no evidence supporting the existence of a causal connection between his mental health and his failure to timely file a § 2255 motion. Indeed, despite his mental health issues, Petitioner—who holds a law degree—has initiated three separate § 2255 actions in which he has filed hundreds of pages of documents. There is no indication that Petitioner's mental health prevented him from timely filing a § 2255 motion. Therefore, Petitioner is not entitled to equitable tolling of the limitations period, and the untimeliness of his § 2255 motion will not be excused.

### F. Other Arguments Rejected

Any of Petitioner's allegations offered to excuse his failure to file the instant motion within the one-year limitations period that are not specifically addressed herein are also without merit.

## III. Conclusion

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

1. The motion to vacate, set aside, or correct an illegal sentence pursuant to 28

---

[13] In Petitioner's criminal case, on September 2, 2008, a bond hearing was held, during which an issue as to Petitioner's competency was raised. (Crim. Case Docs. 13 & 18). On September 22, 2008, Magistrate Judge Kelly held an arraignment hearing, (see Hr'g Mins., Crim. Case Doc. 25, and Hr'g Tr., Crim. Case Doc. 53), and during that hearing both the Government and defense counsel stated that Petitioner was competent to proceed, (Crim. Case Doc. 53 at 3). A psychiatrist testified during that hearing that in his opinion, Petitioner met the federal standard for competency at that time. (Id. at 11). The Court also heard testimony at sentencing regarding Petitioner's claim of diminished capacity based on his mental health issues. (See, e.g., Crim. Case Doc. 144 at 18-95). Throughout the criminal case, the Court repeatedly ensured—by inquiring of Petitioner—that he had a rational and factual understanding of the proceedings. See Dusky v. United States, 362 U.S. 402, 402 (1960). In June 2015, a state court judge appointed a guardian for Petitioner. (See Doc. 108). That event does not, however, bear on the timeliness of Petitioner's motion or his ability to comply with deadlines in 2011 and 2012.

U.S.C. § 2255 (Doc. 1) filed by Frank Louis Amodeo is **DENIED**, and this case is **DISMISSED** with prejudice.

2. The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3. The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:08-cr-176-Orl-28GJK and to terminate the motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Crim. Case Doc. 206) pending in that case.

4. This Court should grant an application for certificate of appealability[14] only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is **DENIED** in this case.

**DONE** and **ORDERED** in Orlando, Florida, on September 25, 2015.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Frank Louis Amodeo
Charles Rahn

---

[14] Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255.